IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re<br><br>Loren Drake Brower,<br><br>    Debtor.<br><br>_____<br><br>Citibank, South Dakota, N.A.,<br><br>    Plaintiff,<br>v.<br><br>Loren Drake Brower,<br><br>    Defendant. | Chapter 7<br><br>Case No. 05-11196-PHX-SSC<br><br>Adversary No. 05-749<br><br><br>MEMORANDUM DECISION<br><br>(Opinion to Post) |

## I. **PRELIMINARY STATEMENT**

Plaintiff, Citibank, South Dakota, N.A., commenced an adversary proceeding against Loren Drake Brower, the Debtor, on October 3, 2005, to determine whether the debt due and owing to it was nondischargeable under 11 U.S.C. §523(a)(2)(A). The Debtor, who is pro se, responded, and the Court conducted various pretrial proceedings in this matter. The Court held a trial on April 20, 2006, with the Plaintiff to file and serve a post-trial memorandum on May 5, 2006, and the Debtor to file and serve a response by May 19, 2006. Upon receipt of the post-trial memoranda, this matter was deemed under advisement. This Decision shall constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, Bankruptcy Rule 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§1334 and 157 (West 2006).

## II. FACTUAL DISCUSSION

The Debtor opened up two charge accounts with the Plaintiff; an account ending in 0113, and another account ending in 3702. In August 2004, the Debtor made a payment on the 0113 account, and the account had a zero balance until January 2005.[1] In January 2005, the Debtor made a number of charges on the account. By the closing date of January 24, 2004, on the 0113 account, the Debtor had incurred aggregate charges of $858.21.[2] By the closing date of February 22, 2005, the Debtor had a balance of $3879.66, including a balance transfer of $2,500. The Debtor only made a payment on the account of $100.00.[3] The Debtor continued to use the account in March and April 2005, making payments of $100 on March 14, and $170 on April 7, 2005.[4] Finance charges and late fees continued to accrue on the account. At the time the Debtor filed his bankruptcy petition on June 21, 2005, the Plaintiff was owed $7,575.67.[5]

In August 2004, the Debtor had a zero balance on the account ending 3702.[6] On December 28, 2004, the Debtor made a purchase in the aggregate amount of $2,433.18.[7] On January 28, the Debtor made payment of $100 on the account, and on February 21, 2005,

---

[1] Exhibit 5.

[2] Id.

[3] Id.

[4] Id. The Debtor also received two credits on his charge account for returned merchandise. However, these credits did not substantially reduce his outstanding balance..

[5] Id. The Plaintiff charged $227.97 in late fees and finance charges on June 23, 2005. Since these charges were improperly made post-petition by the Plaintiff, they have been excluded by the Court.

[6] Id.

[7] Id.

2

the Debtor made a payment of $2,353.14 from his checking account.[8] On March 19, 2005, the Debtor obtained $951 at a Las Vegas casino, and on April 26, the Debtor made a payment of $40 on the 3702 account.[9] With late charges and other fees on the account, the Debtor owed the Plaintiff the aggregate amount of $975.69 at the time that he filed his bankruptcy petition.

The Court's review of the charges on the two accounts reflects that the Debtor made numerous purchases at Best Buy and Fry's Electronics, obtained cash advances or balance transfers, and obtained funds at a casino in Las Vegas.[10] The Court's review of the Debtor's checking account statements reflects that he was receiving a salary from his employer through Mid-March 2005, and that he had a balance in his deposit account of $5,369.97 on February 14, 2005, and a balance of $2,755.08 on March 14, 2005.[11] The Debtor testified that he was either current on the accounts or making the minimum payments required by the Plaintiff on the accounts until he lost his job on March 8, 2005. The Court's review reflects that the Debtor did pay the 0113 account in full or make minimum payments until the April 18, 2005 statement, with a closing date of March 24, 2005.[12] On the 3702 account, the Debtor either paid the account in full or made minimum payments on the account through the May 31, 2005 statement, with a closing date of May 11, 2005.[13] The Debtor testified that at the time that he lost his job, he had funds in a 401(k) account, which he utilized to pay his living expenses, hoping to acquire another position within a short period of time. The Debtor also testified that he contacted the Plaintiff at the time that he lost his job to

---

**8**Exhibits 5 and 6.

**9**Exhibit 5.

**10**Id.

**11**Exhibit 6.

**12**Exhibit 5.

**13**Id.

3

advise the company as to his change in circumstances.  The Plaintiff did not have one of its representatives testify, so the Debtor's testimony as to contacting the Plaintiff was not controverted.

The Debtor did concede various inaccuracies in his schedules filed with his petition.  For instance, he conceded that his truck was not listed on his Schedules, nor was his extensive computer equipment.[14]  The Debtor's Schedules also reflected that he earned $38,316 in 2003 and $37,961 in 2004 from his employment, yet he had incurred $44,000 in credit card debt by the time he filed his bankruptcy petition in June 2005.[15]  To the extent that the Debtor had a 401(k) account at the time that he filed his petition or that he utilized said account to pay his prepetition living expenses, that asset and those transfers were not listed on his Schedules.[16]  The Debtor also did not disclose various prepetition payments to his unsecured creditors.[17] The Debtor further conceded that he opened a checking account at Chase Bank in 2005 which he did not disclose to the Plaintiff, and that although he provided a declaration to the Plaintiff noting that his "spouse" had a job and was providing income to him, he was not married.  The Debtor did testify that he had resided with the same woman for a period of 16 years and that she had required him to move out of her home at the time that he lost his job.

### III. LEGAL DISCUSSION

Pursuant to 11 U.S.C. § 523(a)(2)(A), a monetary debt is nondischargeable "to the extent obtained by false pretenses, a false representation, or actual fraud."  In the Ninth Circuit, to prove nondischargeablity under §523(a)(2)(A), the Plaintiff needs to show that

---

[14] Exhibit 1, Schedule B. The secured automobile loan for the truck was listed on Schedule D.

[15] Id., Schedule F and Statement of Financial Affairs, Question 1.

[16] Id., Schedule B and Statement of Financial Affairs.

[17] Id., Statement of Financial Affairs, Question 3.

4

"(1) that the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor justifiably relied on such representations; and (5) that the creditor sustained alleged loss and damage as the proximate result of such representations." In re Diamond, 285 F.3d 822 (9th Cir. 2002); In re Slyman, 234 F.3d 1081 (9th Cir. 2000); In re Ettell, 188 F.3d 1141, 1144 (9th Cir. 1999); In re Hashemi, 104 F.3d 1122, 1125 (9th Cir. 1996); In re Eashai, 87 F.3d 1082 (9th Cir. 1996). The Plaintiff must establish nondischargeability by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 284, 111 S.Ct. 654, 657-58, 112 L.Ed.2d 755 (1991).

The Plaintiff bears the burden of proof, by a preponderance of the evidence, on all elements of a Section 523(a)(2)(a) request that certain debt be deemed nondischargeable. Grogan v. Garner, 498 U.S. 279, 284, 111 S.Ct. 654, 657-58, 112 L.Ed.2d 755 (1991). The Court concludes that the Debtor was placed in a difficult financial situation in early 2005. The Debtor was required to move out of a residence that was owned by his girlfriend of 16 years. At approximately the same time, he lost his employment. As a result, the Debtor incurred expenses to move into an apartment and was required to utilize his 401(k) retirement plan and other cash on hand to pay his monthly expenses once he lost his employment. The Court has also reviewed the Exhibits which reflect that the Debtor was paying the Plaintiff's accounts in full, or was making the required monthly payments on the account, until he lost his job. The Plaintiff did not refute the Debtor's testimony that he contacted the Plaintiff to advise it that he had lost his job as soon as that had occurred. Given these facts, the Court concludes that the Debtor did not have, at least as to this Plaintiff, the requisite intent to defraud. For a debt to be excepted from discharge, the debtor must actually intend to defraud the creditor. In re Tsurukawa, 258 B.R. 192 (9th Cir. BAP 2001). However, direct evidence of an intent to deceive is rarely shown. Hence, intent may be "inferred and established from the surrounding circumstances." In re Hultquist,101 B.R. 180 (9th Cir. BAP 1989); In re Anastas, 94 F.3d 1280 (9th Cir. 1996); In re Dakota, 284 B.R. 711

5

(Bankr.N.D.Cal. 2002).[18] Because no single objective factor is dispositive, assessment of intent is, thus, left to the fact-finder. <u>In re Jacks</u>, 266 B.R. 728 (9th Cir. BAP 2001). The intent to defraud a creditor is a finding of fact. <u>In re Rubin</u>, 875 F.2d 755, 759 (9th Cir. 1989). In this case, the Plaintiff has not carried its burden of proof on all elements of its claim, and its debt must be discharged.

The Court recognizes that the Debtor did not accurately complete his Schedules, which resulted in his truck and his 401(k) plan not being disclosed to his bankruptcy trustee or his creditors. Although the Debtor believes that the document preparation service did not accurately complete his Schedules, he is the responsible party to make sure that the documents filed with the Court are accurate. However, these inaccuracies in the Schedules should be best referred to the bankruptcy trustee to determine whether there is an appropriate basis to revoke the Debtor's discharge.

---

**18** When determining whether a credit card indebtedness is discharageable, the Bankruptcy Appellate Panel of the Ninth Circuit has adopted twelve factors (the "*Dougherty* factors") as a useful approach in ascertaining whether a debtor intended to repay a credit card debt. <u>In re Dougherty</u>, 84 B.R. 65. <u>See</u> also <u>In re Beltran</u>), 182 B.R. 820 (9th Cir. BAP 1995); <u>In re Jacks</u>, 266 B.R. 728 (9th Cir. BAP 2001). The twelve factors are (1) the length of time between the charges and the bankruptcy filing; (2) whether or not an attorney had been consulted concerning the filing of bankruptcy before the charges were made; (3) the number of charges made; (4) the amount of the charges; (5) the financial condition of the debtor at the time the charges were made; (6) whether the charges were above the credit limit of the account; (7) whether the debtor made multiple charges on the same day; (8) whether or not the debtor was employed; (9) the debtor's prospects for employment; (10) the financial sophistication of the debtor; (11) whether there was a sudden change in the debtor's buying habits; and (12) whether the purchases made were luxuries or necessities. While the *Dougherty* factors provide a useful means of objectively discerning intent, *Dougherty* does not "handcuff the trier of fact", who is in the best position to balance the evidence against the witness's testimony and credibility. <u>In re Jacks</u>, 266 B.R. 728 (9th Cir. BAP 2001). In this matter, even utilizing the *Dougherty* factors, the Court would discharge these obligations. The Debtor's charges on the two accounts were not unreasonable, nor were they for luxury goods. The Debtor did purchase a number of items for his computer, but he did not exceed the credit limit and he needed those items for work-related activities. The Debtor did make the minimum payments on both accounts prior to filing, and the Debtor was forced to leave his residence and lost his job, shortly after the majority of the charges were made. The Debtor reasonably believed that he would be re-employed within a short period of time and be able to make payments on these accounts.

6

## IV. CONCLUSION

Based upon the foregoing, the Court concludes that the Plaintiff has failed to establish all the elements of §523(a)(2)(A). Specifically, the Court finds that the Debtor did not have the requisite intent to defraud. The entire debt owed to the Plaintiff is discharged.

The Court will execute a separate order incorporating this Memorandum Decision.

DATED this 16th day of August, 2006.

*[signature]*

Honorable Sarah Sharer Curley
United States Bankruptcy Judge

BNC TO NOTICE